UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CORNESHA HEARD and CORNELIUS HEARD, JR., by guardian ERICA ERVIN, as children, next of kin, and next friends of CORNELIUS HEARD, SR., deceased, <br><br> *Plaintiffs*, <br><br> v. <br><br> WESTROCK COMPANY, WESTROCK CP, LLC, WESTROCK SERVICES, LLC, WESTROCK-SOUTHERN CONTAINER, LLC, and WESTROCK RKT, LLC, <br><br> *Defendants*. | Case No. 1:22-cv-132 <br><br> Judge Curtis L. Collier <br> Magistrate Judge Susan K. Lee |

## **M E M O R A N D U M**

Before the Court is Defendants' motion to dismiss the first amended complaint for failure to state a claim. (Doc. 15.) Plaintiffs responded in opposition (Doc. 17), and Defendants replied (Doc. 18). The matter is now ripe for review.

**I.  BACKGROUND**

Because the matter is before the Court on a motion to dismiss, the following summary of the facts accepts all factual allegations in Plaintiff's first amended complaint (Doc. 13) as true. *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

The decedent, Cornelius Heard, Sr., worked as a first helper and operator at Defendants' paper box manufacturing facility in Chattanooga, Tennessee, since September 2016. (Doc. 13 at 3, 4.) The facility is "extremely hot and oppressive" during certain months; job postings state that applicants should be able to "withstand demanding physical labor and harsh conditions," including "extreme heat" that exceeds 120 degrees Fahrenheit during the summer. (*Id.* at 4.) In the past,

overheated employees had become sick and required to be transported to the hospital via ambulance. (*Id.*) Those employees were threatened with discipline and discharge, with some employees barred from seeking medical care, warned they could not leave the facility, and instructed to continue working or wait in an office or break room until their shift ended. (*Id.* at 5.)

The decedent typically worked twelve-hour shifts six to seven days each week. (*Id.*) He had a heart condition for which he obtained an authorization for Family and Medical Leave Act ("FMLA") leave during his employment at the facility. (*Id.*) In early May 2021, he almost fainted while working. (*Id.*) He attempted to schedule a medical appointment but was unable to receive time off. (*Id.* at 5–6.)

On May 24, 2021, or May 25, 2021, the decedent was scheduled to work the night shift at the facility. (*Id.* at 6.) During his shift, he started to experience significant chest pain, so he told his supervisor, Corey Reese, that he needed to go home. (*Id.*) Reese "rejected this request," telling the decedent that if he left the facility he would be disciplined and likely fired. (*Id.*) Reese recommended that the decedent purchase chicken noodle soup from the break room vending machine. (*Id.*) The decedent did not want to risk losing his job because he was a single parent to his children, so he went to the break room to eat chicken noodle soup. (*Id.*) While sitting and eating, the decedent's chest pain became worse, so he told Reese that he felt like he needed to go to the hospital. (*Id.*) Reese again told the decedent that if he left the facility he would receive an attendance point and be fired, and instead encouraged the decedent to finish his soup. (*Id.*)

The decedent finished his soup and returned to his assigned machine, where he then collapsed while working. (*Id.* at 7.) Some of his coworkers administered CPR while following the emergency dispatcher's instructions. (*Id.*) The decedent was taken to the hospital, where he

2

was pronounced dead in the early morning. (*Id.*) The Hamilton County Chief Medical Examiner concluded that the decedent's cause of death was hypertensive cardiovascular disease. (*Id.*)

On at least one prior occasion, Reese had prevented a worker from leaving the facility, which exacerbated the worker's medical issues. (*Id.* at 6.) Namely, Reese refused to allow an overheated worker to leave to go to the hospital, instead directing him to stay for an extra thirty minutes after his shift had ended and requiring him to attempt to urinate before leaving. (*Id.*) That worker suffered acute renal failure, hyperkalemia, dehydration, and rhabdomyolysis, which required several days of treatment in the intensive care unit. (*Id.* at 6–7.) Defendants did not discipline, terminate, or train Reese after that occurred; in addition, Reese was promoted to plant manager in 2022, after the decedent's death. (*Id.* at 7, 10.)

On May 23, 2022, Plaintiffs brought a complaint under Tennessee Code Annotated § 20-5-106 alleging wrongful death. (Doc. 1 at 10.) On July 7, 2022, Plaintiffs filed their first amended complaint, which added a second cause of action alleging that Defendants unlawfully interfered with the decedent's rights under the FMLA, 29 U.S.C. § 2612. (*Id.* at 11.) Plaintiffs allege that Defendants received sufficient notice of the decedent's FMLA-qualifying serious health condition, so "it was the burden of Defendants to investigate whether [the decedent's] heart issues" were a serious health condition under the FMLA, but they "conducted no such investigation." (*Id.*)

II.     **STANDARD OF REVIEW**

A Rule 12(b)(6) motion should be granted when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer*, *Inc.*, 484 F.3d 855, 859 (6th

3

Cir. 2007). The same deference does not extend to bare assertions of legal conclusions, however, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility as explained by the Court "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

First, Defendants argue that Plaintiffs' wrongful death claim is barred by the exclusive-remedy provision of the Tennessee Workers' Compensation Act. (Doc. 15 at 1.) Second, Defendants argue that they did not have a duty to investigate whether the decedent's heart issues constituted a serious health condition, so Plaintiffs cannot establish an FMLA interference claim. (*Id.*) The Court will address each in turn.

### A. Wrongful Death Claim

Defendants argue that Plaintiff's wrongful death claim is barred by the exclusive-remedy provision of Tennessee's workers' compensation law:

> The rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident, including a minor whether lawfully or unlawfully employed, shall exclude all other rights and remedies of the employee, the employee's personal representative, dependents or next of kin, at common law or otherwise, on account of the injury or death.

Tenn. Code Ann. § 50-6-108(a). An "injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury." Tenn. Code Ann. § 50-6-102(12)(B). More fundamentally, an injury is deemed "accidental"

> only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment . . . , and shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment.

*Id.* at (12)(A).

The only exception to the exclusive remedy provided by the workers' compensation law is when the "employer must have actually intended for the employee to be injured." *Henry v. CMBB, LLC*, 797 F. App'x 258, 261 (6th Cir. 2020). Defendants argue Plaintiffs fail to allege facts qualifying them for the intentional-tort exception under the act because they do not allege Defendants acted with actual intent. (Doc. 16 at 13.) Instead, Plaintiffs' allegation that Reese told the decedent to eat chicken noodle soup demonstrates, at most, substantial certainty to cause the decedent harm, not actual, deliberate intent to harm the decedent. (*Id.* at 12.) Defendants cite *Valencia v. Freeland and Lemm Construction Co.*, 108 S.W.3d 239, 243 (Tenn. 2003), to argue

that Plaintiffs must plead facts showing more than "gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence." (*Id.* at 13.)

Plaintiffs respond that the Court should deny Defendants' motion to dismiss on the ground that it is not ripe for review because a medical expert has not testified on whether the Tennessee workers' compensation law applies to the decedent. (Doc. 17 at 4.) On this ground, Plaintiffs urge the Court to deny Defendants' motion as premature. (*Id.*)

The Court agrees with Plaintiffs that there is insufficient evidence to find that the workers' compensation law even applies to the decedent's death. "Except in the most obvious, simple and routine cases, the claimant in a worker's compensation action must establish by expert medical evidence the causal relationship between the claimed injuries and the employment activity. The same holds true in cases involving heart attacks." *Bacon v. Sevier Cnty.*, 808 S.W.2d 46, 52 (Tenn. 1991) (internal citations omitted). Neither party has presented any medical evidence of the causal link, if any, between the decedent's death and the conditions of his employment. In their first amended complaint, Plaintiffs allege that "the oppressive, dangerous environment at the Chattanooga mill" contributed to the decedent's fatal heart attack. (Doc. 13 at 10.) Plaintiffs further allege that Defendants' actions "exacerbated [the decedent's] prior heart issues." (Doc. 13 at 10.) Construing the first amended complaint in the light most favorable to Plaintiffs and taking all well-pleaded factual allegations as true, the Court finds that the decedent's death is not covered by the workers' compensation law because the law does not include an injury that is the aggravation of a preexisting disease, condition, or ailment. For that reason, the Court agrees it is premature to address whether Reese's actions fall within the intentional-tort exception to Tennessee's workers' compensation law.

6

Case 1:22-cv-00132-CLC-SKL   Document 28   Filed 12/06/22   Page 6 of 10   PageID #: 158

Because Defendants have not established the causal relationship between the decedent's death and the employment activity, the Court will **DENY** Defendants' motion to dismiss Plaintiffs' wrongful death claim.

### B. FMLA Interference Claim

Defendants argue that Plaintiff's FMLA interference claim must fail because the decedent did not give notice of his intention to take leave, which is a necessary element for an interference claim. (Doc. 16 at 15.) Instead, "Plaintiffs only allege that '[s]ufficient notice was provided to Defendants that a FMLA-qualifying serious health condition may have been involved," which does not give rise to a legal duty by Defendants to investigate whether the decedent had a serious health condition under the FMLA. (*Id.*) Thus, they argue, Plaintiff's FMLA interference claim fails because the decedent did not request or give notice of taking FMLA leave. (*Id.*)

Plaintiffs respond that discouraging an employee from using FMLA leave can constitute unlawful interference. (Doc. 17 at 13.) They argue that they have sufficiently pleaded an FMLA interference claim because not only did the decedent previously attempt to take time off for medical appointments for his heart, but also Defendants prevented the decedent from obtaining hospital treatment for his serious health condition by threatening him with termination. (*Id.*) They further argue that Defendants' burden to inquire about the decedent's serious health condition was triggered when the decedent asked for time off for medical appointments and to go to the hospital on the night of his death. (*Id.* at 14.)

Defendants reply that "Plaintiffs have ignored the statutory notice standard that applies in FMLA cases when an employee seeks leave due to an FMLA-qualifying reason, for which the employer has previously provided FMLA-protected leave." (Doc. 18 at 10.) They argue that the decedent failed to reference specifically the qualifying reason for need or the need for FMLA,

7

which 29 C.F.R. § 825.302(c) requires. (*Id.*) Citing two cases from district courts sitting outside of the Sixth Circuit, Defendants argue that the decedent's "alleged 'notice' to Defendants falls short of the statutory notice standard here." (*Id.*) Defendants also attempt to distinguish the facts here from those in *Cavin v. Honda of America Manufacturing, Inc.*, 346 F.3d 713 (6th Cir. 2003), *Barrett v. Detroit Heading, LLC*, 311 F. App'x 779 (6th Cir. 2009), and *Dighello v. Thurston Foods, Inc.*, 307 F. Supp. 3d 5 (D. Conn. 2018), because in those cases, the employer had not previously granted FMLA leave. (*Id.* at 11–12.) Defendants reiterate that Plaintiffs have pleaded no facts establishing an FMLA interference claim.

To establish a prima facie claim for FMLA interference, a plaintiff must show: "(1) he is an eligible employee; (2) the defendant is an employer; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled." *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 447 (6th Cir. 2007) (citations omitted) (quoting *Cavin*, 346 F.3d at 719). To invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave, but the employee does not have to expressly assert her right to take leave under the FMLA. *Cavin*, 346 F.3d at 724 (first quoting *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998); then quoting *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999)). An employee does not need to invoke the FMLA expressly, so there is sufficient notice when the employee gives the employer enough information for the employer to reasonably conclude that an event described in the FMLA has occurred. *Cavin*, 346 F.3d at 723–24 (quoting *Hammon*, 165 F.3d at 451). A supervisor's knowledge of notice is imputed to management. *Cavin*, 346 F.3d at n. 8 (citing *Cunningham v. Gibson Elec. Co.*, 43 F. Supp. 2d 965, 975 (N.D.

8

Ill. 1999)). Adequacy of the employee's notice is a fact- and case-specific inquiry. *Cavin*, 346 F.3d at 724 (quoting *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995)).

Here, taking all alleged facts as true, the Court finds Plaintiffs have pleaded facts arising to a colorable claim of FMLA interference. As an initial matter, the decedent had previously obtained an authorization for FMLA-protected leave for his heart condition, which is the FMLA-eligible serious health condition that flared up on the night of his death. (Doc. at 5, 9). Therefore, the decedent was an eligible employee, Defendants are employers covered by the FMLA, and the decedent was entitled to leave under the FMLA. Next, the decedent gave sufficient notice for Defendants to reasonably determine whether the FMLA may apply to his request for leave. 29 C.F.R. § 825.303(b) (describing employee notice requirements for unforeseeable FMLA leave). "He advised Mr. Reese that he had a serious health concern and that he felt he needed to go directly to the hospital." (Doc. 13 at 6.) In other words, the decedent specifically informed Reese—whose knowledge is then imputed to management—of his inability to perform his job at the moment due to his serious health condition. This is not comparable to an employee calling in sick without providing additional information to put an employer on notice. And when Reese was informed of the decedent's serious health condition, Reese told the decedent he could be subject to discipline consisting of being assessed an attendance point, which could consequently lead to the decedent's termination. (*Id.* at 6, 9.) As the Court of Appeals for the Seventh Circuit suggests, "[t]hreatening to discipline an employee for seeking or using FMLA leave to which he is clearly entitled clearly qualifies as interference with FMLA rights." *Ziccarelli v. Dart*, 35 F.4th 1079, 1090 (7th Cir. 2022) (citing *Preddie v. Bartholomew Consolidated School Corp.*, 799 F.3d 806, 818 (7th Cir. 2015)). Plaintiffs have a plausible claim for FMLA interference based on the facts as pleaded.

9

Defendants' reliance on *Erdman v. Wachovia*, No. 7:10-cv-3070, 2012 WL 728917 (D.S.C. Feb. 16, 2012), *report and recommendation adopted*, No. 7:10-cv-3070, 2012 WL 716595 (D.S.C. Mar. 6, 2012), and *Shelton v. Price Waterhouse Coopers, LLP*, No. 8:12-cv-2757, 2014 WL 2581350 (M.D. Fla. May 23, 2014), is unavailing because they are factually distinguishable. In *Erdman*, the terminated employee told her coworkers that she had "appointments" and attended doctors' appointments on her lunch break so people would not know she was experiencing an FMLA-qualifying thyroid condition. 2012 WL 728917 at *1. In *Shelton*, it was undisputed that the terminated employee had "called in sick without referencing her serious health condition." 2014 WL 2581350 at *2. But here, the decedent had expressly told Reese that "he had a serious health concern and that he felt he needed to go directly to the hospital." (Doc. 13 at 6.) This statement, taken in conjunction with his previously obtained authorization for protected leave under the FMLA, can be sufficient notice to Defendants that the decedent was requesting time off in connection with an FMLA-qualifying condition.

Accordingly, the Court will **DENY** Defendants' motion to dismiss Plaintiffs' FMLA interference claim.

IV.     **CONCLUSION**

For the foregoing reasons, the Court will **DENY** Defendants' motion to dismiss (Doc. 15).

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**